NATIONAL DISTILLERS PRODUCTS CORPORATION, Appellant, v GLANDER, TAX COMM., Appellee.

Ohio Board of Tax Appeals.

No. 11118.   Decided March 12th, 1947.

**ENTRY**

This cause and matter came on for consideration by the Board of Tax Appeals upon an appeal filed herein by the appellant, above named, from a final order of the tax commissioner denying an application theretofore filed by the appellant for the review and correction of an additional intangible personal property tax assessment in the amount of $8,990.01 made against it for the tax year 1944. The case was heard and submitted to the Board upon said appeal, on a transcript of the proceedings before the tax commissioner relating to the additional tax assessment made against it, upon a stipulation of the facts in the case and on the briefs and arguments of counsel.

It appears from the facts thus presented that appellant is a corporation organized and existing under the laws of the State of Virginia where its stockholders' meetings are held. The principal business of the corporation is in the City of New York where all of its executive offices are located; and all of its business activities are governed and controlled from its offices in New York. All of its accounts payable were paid from funds on deposit in New York. The corporation has distilling and refining plants in seven state, including a large plant at Carthage, Hamilton County, Ohio; and it sells its products in every state where such products may be legally sold. Pay roll checks for employes of these several plants and checks for Federal excise taxes due from said plants, including the one located at Carthage, Ohio, were paid with funds on deposit in banks in these several localities where such plants are located. These funds were obtained through checks drawn at the office of the corporation in New York on banks in said city. All accounts receivable were posted in the books of the corporation in the City of New York where such accounts were payable and where all of its receipts were deposited.

The accounts receivable here in question, the allocation of which resulted in the additional intangible property tax assessment complained of, arose from the sale of products manufactured by the corporation at its plant in Carthage, Ohio, which products were shipped from a stock of goods

maintained by the corporation at its Carthage, Ohio, plant to points in the State of Ohio and elsewhere throughout the United States. All orders for the sale of these products were solicited by agents outside of Ohio—no such sales agents being located in this State—, which orders were forwarded to New York and were subject to acceptance or rejection by the office of the corporation in said city. When such orders were accepted by the New York office, shipping orders were forwarded from that office to the Ohio plant from which the products were shipped to points in the State of Ohio and elsewhere pursuant to such sales orders so made and accepted; and no shipments or deliveries from the Ohio plant were made except those confirmed by such shipping orders. As above indicated, all checks in payment of the purchase price of the products of the company sold by the company and delivered from its plant at Carthage, Ohio, pursuant to such sales orders, were made payable to the company at its office in New York City. In this connection it does not appear that any of the accounts receivable or of the moneys received by the company in payment of the same were used by the company in connection with its business in Ohio as distinguished from the general business of the company; but, on the contrary, it does appear that such accounts receivable and the avails thereof were used by the appellant in its business generally and wherever conducted.

From the stipulation of facts filed herein it appears that during the calendar year 1943 the corporation shipped $166,-044,382 worth of its products from all of its plants and warehouses throughout the United States wherever manufactured; and included in the aggregate amount and value of such products were products of the amount and value of $56,819,430 which, during said calendar year, were shipped from its said plant and plant warehouses in Ohio to customers throughout the United States.

It appears that the appellant, in filing its annual intangible and personal property return for the tax year 1944, did not allocate any of its accounts receivable to the State of Ohio; and that thereafter the tax commissioner, on audit of said annual return, corrected the same by ascribing an Ohio situs to a part of the accounts receivable of the appellant in the sum of $2,996,670, which accounts receivable, amounting to 34.2191% of all of its accounts receivable for the calendar year 1943, arose from sales of its products which were shipped from its plant and plant warehouses in Ohio to customers throughout the United States.

The question presented in this appeal as to whether or not the tax commissioner erred in allocating said accounts receivable to the State of Ohio and in including the same as a part of the taxable property of the appellant for the tax year 1944, requires a consideration of the pertinent provisions of §§5328-1 and 5328-2 GC. Sec. 5328-1 GC, which is the declaratory section with respect to the taxation of intangible property, provides generally that all moneys, credits, investments, deposits, and other intangible property of persons residing in this State shall be subject to taxation, excepting as provided in said section or as otherwise provided or exempted in the title of which this section is a part. This section further provides as follows:

"Property of the kinds and classes mentioned in §5328-2 GC (including accounts receivable), used in and arising out of business transacted in this state by, for or on behalf of a non-resident person * * * shall be subject to taxation; and all such property of persons residing in this state used in and arising out of business transacted outside of this state by, for or on behalf of such persons * * * shall not be subject to taxation."

Sec. 5328-2 GC, provides:

"Property of the kinds and classes herein mentioned, when used in business, shall be considered to arise out of business transacted in a state other than that in which the owner thereof resides in the cases and under the circumstances following:

"In the case of accounts receivable, when resulting from the sale of property sold by an agent having an office in such other state or from a stock of goods maintained therein, or from services performed by an officer, agent or employe connected with, sent from, or reporting to any officer or at any office located in such other state. * * * "

This section further provides as follows:

"The provisions of this section shall be reciprocally applied, to the end that all property of the kinds and classes mentioned in this section having a business situs in this state shall be taxed herein and no property of such kinds and classes

belonging to a person residing in this state and having a business situs outside of this state shall be taxed. It is hereby declared that the assignment of a business situs outside of this state to property of a person residing in this state in any case and under any circumstances mentioned in this section is inseparable from the assignment of such situs in this state to property of a person residing outside of this state in a like case and under similar circumstances. If any provision of this section shall be held invalid as applied to property of a non-resident person, such decision shall be deemed also to affect such provision as applied to property of a resident, but shall not affect any other provision hereof."

Sec. 5325-1 GC, which defines the term "used in business" in connection with the taxation of tangible and intangible personal property, provides, among other things, as follows:

"Moneys, deposits, investments, accounts receivable and prepaid items, and other taxable intangible shall be considered to be 'used' when they or the avails thereof are being applied, or are intended to be applied in the conduct of the business, whether in this state or elsewhere. 'Business' includes all enterprises of whatsoever character conducted for gain, profit or income and extends to personal service occupations."

Referring to the above quoted statutory provisions and, particularly, to the provision of §5328-2 GC, that "the provisions of this section shall be reciprocally applied, to the end that all property of the kinds and classes mentioned in this section having a business situs in this state shall be taxed herein and no property of such kinds and classes belonging to a person residing in this state and having a business situs outside of this state shall be taxed," it may be observed that these statutory provisions indicate a policy to treat, so far as possible, domestic corporations and other residents of this State on one hand, and foreign corporations and other non-residents on the other hand, on a basis of equality with respect to the taxation of business intangibles. Although the term "business situs," as used in the above quoted provision of §5328-2 GC, is not therein further defined, we are admonished in and by the decision of the Supreme Court of this State in the case of **The Ransom & Randolph Company v Evatt, Tax Commr., 142 Oh St 398, 408,** that §5328-2 GC, fixes the business situs of accounts receivable and other classes of intangible property therein referred to, and that, for this pur-

pose, effect is to be given to this statute rather than to any general rule which might otherwise be applicable to cases of this kind.

On the consideration of the case of **The Ransom & Randolph Company v Evatt,** when the same was before the Board of Tax Appeals for decision, **25 OO 253,** which case involved the question as to the taxable situs of the accounts receivable of an Ohio corporation which arose in the transaction of the business of the company in the States of Indiana and Michigan, this Board was required to construe and apply the statutory provisions above quoted and particularly the provision of §5328-1 GC, that "all such property (accounts receivable and other kinds and classes of intangible property mentioned in §5328-2 GC) of persons residing in this State used in and arising out of business transacted outside of this State by, for or on behalf of such persons, * * * shall not be subject to taxation." On a consideration of the statutory provisions above noted, the Board of Tax Appeals was of the view that before a business situs of accounts receivable and other intangible property, for the purposes of taxation, could be given to a state other than the state of the domicile of the taxpayer, it must appear that such receivables or other intangible property not only arose in the conduct of the business of the taxpayer in such other state, but were therein so used as to become an integral part of the business carried on in such other state; and that it was not sufficient that such accounts receivable and other intangible property be used in business generally by the taxpayer. And on this view the Board held that the accounts receivable there in question, although they arose in the conduct of taxpayer's business in the States of Indiana and Michigan, did not have a business situs in such states, and that such accounts receivable were taxable in Ohio.

On the appeal of the decision of the Board of Tax Appeals in The Ransom & Randolph Company case to the Supreme Court of Ohio, that Court reversed the decision of the Board of Tax Appeals upon the point above indicated. **142 Oh St 398, 404.** That Court, upon consideration of the applicable provisions of §5328-2 and related sections of the **General Code** above noted, held that the accounts receivable of a taxpayer which arose in the conduct of its business in a state or states other than the state in which it had its domicile or place of residence, had a business situs in such other state or states if such accounts receivable or the avails thereof are being applied or are intended to be applied in the conduct of the taxpayer's business, whether in this State or elsewhere. This view of the

Supreme Court as to the construction to be placed upon the statutory provisions here in question was later followed by that Court in its decisions in the cases of **The Haverfield Company v Evatt, Tax Commr., 143 Oh St 58,** and **National Cash Register Company v Evatt, Tax Commr., 145 Oh St 597.**

The appellant, as a corporation organized and existing under the laws of the State of Virginia, is a legal resident of that state; and as to the appellant corporation the State of Ohio is "a state other than that in which the owner thereof resides" and "such other state" within the provisions of §5328-2 GC, fixing the situs of accounts receivable and of other intangible property for purposes of taxation. In this situation, and applying the statutory provisions here in question, as the same have been construed by the Supreme Court of this State, it follows that since the accounts receivable of the appellant corporation involved in this case arose—as this Board hereby finds—, in the conduct of its business in the State of Ohio by the sale of its products from a stock of goods located in this State, and since, further, such accounts receivable or the avails thereof were used or were intended to be used by the appellant in its business, whether in this State or elsewhere, such accounts rceivable have a business and taxable situs in the State of Ohio, as found and determined by the tax commissioner.

With respect to a question such as that here presented, to wit, that as to the taxation of the accounts receivable of a foreign corporation arising in the conduct of its business in this State, the application of the above noted provisions of §§5328-1, 5328-2 and other related sections of the **General Code,** as the same have been construed by the Supreme Court, presents, to our mind, a serious question as to the constitutionality of said statutory provisions as so construed under the due process of law clause of the Federal Constitution. However, as to this, it is fair to state that recently the Supreme Court of the State of Georgia in the case of Parke, Davis & Company v Atlanta, 200 Ga. 296, 163 A. L. R. 976, 36 S. E. (2d) 773, sustained a tax under the laws of that state on the accounts receivable of a foreign corporation which arose from the sale and delivery of its products from a stock of goods in the City of Atlanta in said state. The decision of the court on this point, as indicated by the syllabi in the report of such decision, is as follows:

"Where a foreign corporation kept a stock of goods in a warehouse in the City of Atlanta, Ga., orders were received and approved outside the state, which were filled by delivering

goods from the warehouse to resident purchasers and to common carriers for delivery to nonresident purchasers, accounts receivable thereon arise out of business conducted in the City of Atlanta, and would have a taxable situs for ad valorem taxation by said municipality, notwithstanding that the orders taken by the nonresident owner, for the merchandise sold in the municipality, are passed upon as to the credit of customers, and the books of account are kept, at a point without the City of Atlanta and the State of Georgia.

"Where a nonresident corporation became the owner of accounts receivable arising out of business conducted in a municipality in this state, such credits had a tax situs in the municipality where such business was conducted, so that the enforcement of a tax upon the credits would not be contrary to the guaranty of the due process or equal protection of the law as expressed in the Fourteenth Amendment on the Constitution of the United States, or paragraphs 2 and 3 of section 1 in article 1 of the Constitution of Georgia, notwithstanding that the credit of the customers may have been passed upon, and the books of account kept by the corporation at a point without the state."

With respect to the constitutional aspects of the question here presented, the case of Parke, Davis & Company v Atlanta, supra, cannot be distinguished on the facts from the case at bar; for in that case, as in this, the accounts receivable which arose in the conduct of the taxpayer's business in the taxing state were not used otherwise than in the transaction of the taxpayer's business generally and as a whole.

Whatever the answer may be as to the constitutionality of the above quoted provisions of §§5328-1, 5328-2 and related sections of the **General Code,** as the same have been heretofore construed by the Supreme Court of this State, in their application to the facts of this case, it is quite clear that the Board of Tax Appeals, as an administrative and quasi judicial board or tribunal, has no jurisdiction and authority to consider and determine such constitutional question. See Hillsborough Township v Cromwell, U. S. Sup. Ct., Case No. 197, 90 L. ed. 298, 302; Schwartz v Essex County Board of Taxation, 129 N. J. L. 129, 132, affirmed 130 N. J. L. 177. In the case last above cited it was said:

"It is undisputable that the determination of the constitutionality of an act of the legislature rests with a judicial body; not with a quasi judicial body such as the State Board of Tax

Appeals. The final responsibility to pass upon the constitutionality of a given piece of legislation rests in the courts and it is the duty of the various state agencies and administrative bodies to accept a legislative act as constitutional until such time as it has been declared to be unconstitutional by a qualified judicial body."

The Board of Tax Appeals is, of course, bound by the above cited decisions of the Supreme Court of this State construing the above quoted statutory provisions as to the business situs of accounts receivable and other intangible property; and in this view the assessment and order of the tax commissioner complained of in this appeal is hereby affirmed .